### Larkin Company v. Commonwealth.

(Decided November 9, 1916.)

### Appeal from Daviess Circuit Court.

1. Corporations—Crimes and Criminal Prosecutions—Pleading.—In a penal action the only plea required of the defendant in order to put in issue the charges made by the Commonwealth is one of not guilty. But if he files an answer denying such charges, it will have the same effect, and it is unnecessary to allege in another paragraph of the answer the facts constituting his defense, and if he should do so the Commonwealth is not required to reply thereto.

2. **Corporations—Crimes and Criminal Prosecutions.**—Where goods were ordered from the defendant at its place of business in Buffalo, New York, from a place in this state, and the order is accepted and goods shipped from its house in Buffalo, remittances being made by the purchaser, no part of the sale occurring in this state, the transaction is one exclusively interstate commerce, and the defendant cannot be compelled to comply with section 571 of the Kentucky statutes by filing with the secretary of state a satement designating an agent upon whom process may be served on behalf of the defendant.

3. **Corporations—Crimes and Criminal Prosecutions.**—Merely advertising one's business or goods, wares or merchandise is not a carrying on of business at the place where the advertisement is made, even though such advertisement consists in exhibiting samples of the goods for the inspection of prospective customers.

4. **Principal and Agent—Proof of Agency.**—Agency cannot be proven by the declarations of the supposed agent.

LOUIS I. IGLEHEART for appellant.

M. M. LOGAN, Attorney General, and O. S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is a penal prosecution instituted by the Commonwealth in the Daviess Circuit Court to recover the prescribed penalties for a failure on the part of defendant, Larkin Company (appellant), and its co-defendant, R. C. Thum, to comply with the provisions of section 571 of the Kentucky Statutes.

It is alleged in the petition that "The defendant company and defendant Thum are on this date, and have been continuously for more than thirty days before this date, carrying on business in this state and in the city of Owensboro, in Daviess County, their business being that of advertising and distributing certain soaps, perfumes, furniture and other articles of merchandise, and employed agents to sell, advertise and distribute same."

It is shown that the defendant, Larkin Company, is a foreign corporation, and not an insurance company, and that it failed to comply with the provisions of the statue by filing with the secretary of state the statement therein required showing the name or names of an agent or agents upon whom process against it might be served.

A written answer was filed, the first paragraph of which was a general denial, and amounted only to a plea of not guilty. The second paragraph set out in detail

the acts of the defendant showing that the transactions out of which the prosecution grew, according to the contention made, did not constitute "doing business" in the state within the meaning of the statute, but that the same was purely and simply interstate commerce transactions, and were consequently such that the state could not regulate by any kind of impositions, including the one prescribed by the statute, *supra*.

The second paragraph was not replied to by the Commonwealth, and complaint is made of this on this appeal; but we are not inclined to look upon this contention as possessing merit. There was no necessity of a written answer, as all that was required of defendants was the entering of a plea of not guilty, the same as to a prosecution by indictment. This was effectually presented by the first paragraph of its answer, and the second paragraph thereof was but a pleading of its evidence and wholly unnecessary, the issue having been made by the first paragraph. Upon the trial, the jury by its verdict found the defendant, Thum, not guilty, but found the appellant guilty, fixing its fine at $500.00, upon which judgment was rendered, and this appeal is prosecuted to reverse that judgment.

The principal office of the appellant is in the city of Buffalo, New York, and it handles a great variety of articles for sale, ranging from the smallest to the largest. It has various branch offices located in different parts of the United States, and from each of which certain prescribed territory is supplied with its goods, but the territory covered by Daviess County is supplied from the head office at Buffalo, New York. Its method of doing business is best told by its two witnesses connected with the home office, and whose depositions were taken on its behalf. When asked regarding this point these witnesses testified:

"The business of the defendant Larkin Co. in Daviess County, Kentucky, and in Owensboro, Kentucky, has been exclusively conducted and carried on by and through mail orders. Customers in Daviess County, Kentucky, and Owensboro, Kentucky, mail their orders to Buffalo. If, through a mistake or misunderstanding, they mail orders to any of the Larkin branches the orders would, by regular office routine, be transmitted to Buffalo. Delivery is made by means of one of the forms of transportation previously referred to, that is, freight,

express or parcel post.  Sometimes a customer will have others join with her in sending for goods, in which cases the goods are prepared for shipment in the fewest number of packages for the sake of economy, and shipped in the name of the customer who transmitted the order to us.  The consignee then breaks bulk and distributes the goods pursuant to the individual orders.  That is our regular routine, and business from Daviess County, Kentucky, and Owensboro, Kentucky, is handled in that way.''

It is shown that the company has adopted a method of advertising its goods, called in the record ''traveling showrooms,'' and one of these was in Owensboro at the time the matters occurred out of which this prosecution grew, it being in charge of the defendant, Thum.  It is further shown that the traveling ''showroom'' remained in one place not exceeding five or six days.  It contained a great many samples of various articles handled by the appellant, and the public were invited there for the purpose of inspecting them, that the goods might, in this manner, be more effectually advertised than through the usual method of catalogue or circular, although the latter mode was adopted and in use by the appellant.  It furthermore appears that the ''showroom'' did not pretend to be, nor was it, a regular store at which articles could be purchased; that it was only for the purpose of exhibition, and, excluding the contention of the Commonwealth, to which we shall hereafter refer, it is not shown that any articles were sold from this ''showroom'' while in Owensboro.  On the contrary, all goods were sold by orders sent to the house at Buffalo, and, when approved, the goods were shipped to the person making the order.  Sometimes they would be what are called club orders.  The one getting up such an order would receive a premium, and the order would contain articles desired by a number of persons, but the shipment would be made to the one getting up the club, who would accompany the order with a remittance for the full amount of it.  Obviously such transactions are interstate commerce ones, only, and insufficient to support a charge against the defendant of doing business within this state.  It has never been held by any court, so far as we are aware, that sales made through orders sent from one state to another, which are accepted at the latter place, and the goods shipped to the one making

the order, made the seller guilty of doing business in the state from which the order was sent so as to be amenable to the laws of that state regulating persons doing business therein. The same is true where the orders are taken by an agent of the seller without being received directly from the customer. Such transactions are interstate ones exclusively, and cannot be regulated by the state. It has been so held by the United States Supreme Court in a number of cases, among which are: Crutcher v. Kentucky, 141 U. S. Reports 47; Caldwell v. State of North Carolina, 187 U. S. Reports 622; International Harvester Company v. Comlth., 234 U. S. Reports 579, and Sioux Remedy Company v. Cope, 235 U. S. Reports 197. As being more directly applicable to the facts we have here, we take from the Caldwell case, *supra*, the following:

"Nor does the fact that these articles were not shipped separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It is only that the vendor used two instead of one agency in the delivery."

This question has been before this court in the cases of Commonwealth v. Eclipse Hay Press Co., 31 Ky. Law Rep. 824; Commonwealth v. Hogan, McMorrow and Tieke Co., 25 Ky. Law Rep. 41; Commonwealth v. Baldwin, 29 Ky. Law Rep. 1075; Three States Buggy and Implement Company v. Commonwealth, 32 Ky. Law Rep. 385; Commonwealth v. Chattanooga Implement and Mfg. Co., 126 Ky. 636, and perhaps others.

The Eclipse Hay Press Company case is one where the defendant was charged with the same violation as is appellant here. The proof showed that the defendant therein was a Missouri corporation engaged in manufacturing and selling hay presses. The only business which the evidence showed it conducted in Kentucky, according to the opinion, "was to employ agents here to solicit orders, which were forwarded to the company at Kansas City, Missouri, for approval by the principal. If the order was approved, the presses were shipped from Missouri to the consumer, or to the agent for the consumer." There was a judgment in that case finding the defendant not guilty, which was affirmed by this court, and in doing so we said:

"The business done by appellee was interstate commerce, and it is now too well settled to be questioned that a state may not impose regulations upon interstate commerce, this being under the constitution of the United States, exclusively within the province of Congress."

The other opinions from this state are to the same effect, as, indeed they are from all the other states, so far as we are aware.

The Commonwealth seeks to avoid this well-established principle by showing facts which it claims constituted "doing business" by appellant at Owensboro. This testimony was given by two witnesses, one of whom said that when the "traveling showroom" was in Owensboro; he purchased from an individual in his office and paid for it there, some tea, amounting to sixty cents, which had on it the Larkin Company label. The person who delivered the tea and collected the price therefor, but whose name is not given, according to this witness, claimed to be the agent of appellant. Another witness testified that he purchased some perfumes, and perhaps other toilet articles, in the same manner, from some children who claimed to be selling them as representatives of appellant. Strange as it may seem, these comparatively insignificant transactions are the only ones presented to us having the remotest tendency to even indicate a carrying on of business by appellant in Owensboro, throughout the entire time that the "traveling showroom" remained in that city, and even these are not shown by competent testimony, because it is a well-established rule in the law of agency that the fact of agency cannot be proven by the testimony alone of the supposed agent. In the cases from this state to which we have referred there are instances of the transaction approaching much nearer to a violation of the statute than do the facts of this case. For example, in the Three States Buggy and Implement Company case, *supra,* the Buggy and Implement Company consigned its goods from its wholesale house at Cairo, Illinois, to Walker & Brent, dealers at Bardwell, Kentucky, under a contract whereby the consignees could return to the company, after the season was over, all unsold goods, and receive credit therefor. This would seem to indicate that there was some character of interest retained by the Buggy and Implement Company in the goods shipped, but in holding the Company not guilty of the same charge we are now consider-

ing, because the transaction was not "a carrying on of business" in this state, the court said:

"We conclude that appellant was not, in this transaction, carrying on business in this state within the contemplation of section 571 Kentucky Statutes."

The courts generally, in dealing with this question, determine what transactions do not amount to "carrying on business within the state." But seldom do we find a concrete definition of what is included in the term "doing business." In the transactions considered by this court in the cases referred to, the persons proceeded against were, under the facts, found not to be engaged in business within the contemplation of the statute. We find, however, in appellant's brief, a quoted concrete definition of what is "doing business," but from whence taken is not shown, which so completely conforms to our notions of the correct one, that we have concluded to adopt it. It is:

"Business does not mean stock or machinery, or capital and the like. While business cannot be done without these, in commercial language it is as distinct from them as labor is from capital. In speaking of the business that may be done by a merchant, banker or railroad company, the mind does not contemplate or dwell upon the character or quality of the means used, but of the operations, whether great or small, complex or simple, numerous or few, for one or the other of these conditions may arise from much or little stock or capital. In other words, *business* does not mean dry goods, nor cash, nor iron rails and coaches. Business is not these lifeless and dead things, but the activities in which they are employed. When in motion, then the owners are said to be *in business;* and then it is that merchants and others speak of the profits of the business."

Guided by this definition, and the authorities to which we have referred, we find no difficulty in concluding that the competent testimony in this case shows only interstate commerce transactions, and that the appellant was not "carrying on business" in this state, and therefore not amenable under the statute. Having arrived at this conclusion, it is unnecessary to consider other questions presented. For the error in failing to direct the jury to acquit the appellant, the judgment is reversed with directions for proceedings consistent with this opinion.