## EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. THOMAS et al.

### No. 9774.

Circuit Court of Appeals, Eighth Circuit.

Feb. 19, 1934.

John M. Schaupp, of Fort Dodge, Iowa (W. E. Mitchell, William E. Mitchell, D. L. Ross, Edwin D. Mitchell, Folsom Everest, and Karl F. Geiser, all of Council Bluffs, Iowa, on the brief), for appellant.

Allan Loth, of Fort Dodge, Iowa (Thomas & Loth, of Fort Dodge, Iowa, and A. C. McGill, of Des Moines, Iowa, on the brief), for appellees.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

It appears in this case that the Equitable Life Assurance Society of the United States (referred to as the society) was the owner of an $8,000 mortgage, duly recorded, upon certain lands in Webster county, Iowa. The plaintiff, Thomas, bought the lands and assumed to pay the mortgage. He borrowed the money for the purpose from the Equitable Life Insurance Company of Iowa, and directed that company, as his agent, to make the payment. The Iowa company delivered its check payable to the society to the local loan correspondent of the society, Collins Mortgage Company; the check being drawn on a New York bank for the full amount of the mortgage and interest. The Collins Company made rubber stamp indorsement of the name of the society upon the check making the same payable to the order of itself and then indorsed it generally to the order of any bank, banker, or trust company for deposit to its account in its bank at Cedar Rapids. Subsequent indorsements and markings upon the check, which was produced in court by the maker, indicate that it was paid in due course through the New York Clearing House. The society refused to release the mortgage, and claimed that the Collins Company had no authority to indorse the name of the society on the check; that the attempted indorsement of the society's name and subsequent use of the check by the Collins Company constituted conversion thereof by that company; that the society never got the money; and that its mortgage has not been paid.

This suit was brought in equity by Thomas, the owner of the land, to have adjudication that the mortgage debt was paid and for cancellation. The trial court found for the plaintiff and decreed relief as prayed. The society appeals.

The trial court found that from 1913 until November, 1931, the Collins Company and the society were parties, respectively, to a written contract constituting the Collins Company a loan correspondent of the society; the contract contemplating that the Collins Company would make farm loans in the territory assigned to it and that the society would accept such of the loans as it approved of. A system was provided for the society to turn over to the Collins Company the amount of principal and interest upon the receipt, approval and acceptance of loan papers by the society, but with the privilege reserved to the society to retract as to any particular loan within a year. It was incumbent upon the Collins Company to attend to the

collection and remittance of interest and principal of the loans accepted by the society; to report as to all unpaid taxes or assessments affecting the loans, and, at the request of the society, to attend to procuring insurance and payment of taxes and assessments and to give immediate notices of delinquency, and, if necessary for the protection of the society, to pay insurance, taxes, and assessments and buy in at tax sales for the account and benefit of the society; to furnish reliable attorneys at its own charges to foreclose when necessary. The society agreed to reimburse the correspondent for insurance premiums, taxes, and assessments advanced unless paid by the borrower. The correspondent guaranteed the titles and agreed to repay the society any sum of money which it was unable to collect on account of failure or defective title.

A great number of loans running into many millions of dollars were procured and turned over to the society in accordance with the contract, and the testimony at the trial disclosed what the practices, customs, and course of dealings between the borrowers, the Collins Company, and the society had been, including the method of accounting between the Collins Company and the society.

It appears, and the court found, that, for the period of time during which the society and the company conducted business under the contract, the Collins Company not only looked after the collection of all interest and principal, but the payment of taxes and other matters connected with the farm loans in which the society was interested, and the society did not deal or have contact directly with borrowers. Throughout the entire period the custom was for the company to make daily remittances of collections to the society, but in no instance by transmitting the same moneys, checks, or drafts given by the borrowers. In instances where payments were made in checks or drafts payable to the society, the Collins Company indorsed the name of the society by a rubber stamp which carried the name of the society upon it and which had been furnished the Collins Company by the society from its New York office for the purpose of making indorsement of the society's name. The Collins Company then deposited the checks and drafts in a certain bank in Cedar Rapids, Iowa, at which the Collins Company did its business. The Collins Company did not remit single payments separately, but by general check or draft covering the balance of daily receipts subject to

remittance. The indorsement of the name of the society upon the check received by the Collins Company from the plaintiff's agent, and the deposit of the check in the bank by the Collins Company, was shown to have been done in the usual course of a long-settled custom in the transaction of the business of collecting loans for the society.

The contract between the society and the Collins Company contained the following provision:

"Eleventh: It is further agreed that in all transactions arising out of the performance of this agreement, the party of the first part is acting and will act as agent of the borrowers in negotiating loans, and in no instance is to act or shall be authorized to act as agent of the Society, and that the commission charged the borrower for procuring the acceptance of any loan shall in no event exceed one per centum of the amount of the loan for each year for which the loan is made."

It does not appear that the particular terms of the written contract between the society and the Collins Company, or the above provision thereof, was ever brought to the knowledge of the plaintiff, Thomas, or to his agent, the Equitable Life Insurance Company of Iowa, but it is shown that the plaintiff's agent had many dealings with the society through the Collins Company and was thoroughly familiar with the long-established course of business of the society by which all of its collections on account of its mortgage loans in the Iowa territory were made through its loan correspondent Collins Company, and that, whenever borrowers made their payments to the Collins Company, the society, in due course, forwarded the proper releases and acquittances to the company and caused them to be delivered to the borrowers through the Collins Company. The testimony showed that in some cases where borrowers in that territory directed their communications or payments to the society in New York, the same would be returned by the society to the Collins Company before acting thereon, and so the attempt of such borrowers to make payment or deal with the society otherwise than through the Collins Company merely occasioned delay. The plaintiff's agent was also familiar with the Collins Company's custom of making rubber stamp indorsements of the society's name upon checks made payable to the society and delivered by borrowers to the Collins Company in payment of obligations to the society and that the collection of the

moneys due the society was effected in that manner. ·

The evidence fully disclosing the course of business sustains the finding of the trial court that the rubber stamp used by the Collins Company to indorse the name of the society upon the check received in payment of the mortgage debt in controversy had been furnished by the society to the Collins Company and was in the regular course of the business used by that company for the purpose of indorsement when payments were made by borrowers in checks or drafts payable to the society. A witness testified that when the stamp was furnished it was understood that it was to be used in cases where the items covered by the check comprised sums due to both the society and the Collins Company, but the only fair inference from the extensive course of business and the fact that the business of the Collins Company was from time to time examined by auditors of the society was that the stamp was used as above stated so constantly and notoriously that the society could not have been ignorant of it.

The trial court found that the plaintiff had caused the full amount of his mortgage debt to the society to be paid in good faith to the Collins Company, without knowledge or notice of any claim on the part of the society that the Collins Company was not fully authorized to receive such payment, and that the society, by the course of dealings, had waived the provision of the contract which negatived or restricted the authority of the Collins Company to act as its agent in the collection of principal and interest of loans held by the society, and the court concluded as a matter of law that the payment to the Collins Company was payment of the mortgage debt and that the plaintiff was entitled to a surrender of his note and a release of the mortgage by the society.

By numerous assignments of error the society presents its contentions to the effect that the Collins Company had no authority to indorse the check delivered to it by the plaintiff's agent, that, by such indorsement and the subsequent deposit of the check to its own credit, the Collins Company converted the same, and that the society was not bound and that the society has not been paid. There are also assignments based upon the receipt of testimony in evidence, but they need not be separately discussed apart from the general inquiry whether a right decree was arrived at by the trial court. Clauson v. United States (C. C. A.) 60 F.(2d) 694.

The facts found by the court in full conformity with the evidence fully sustain its decree on very elementary principles. As the society had no other agent in the collection of the many millions of dollars which were collected for it during the long period of its contract with the Collins Company except the Collins Company, and as the Collins Company made all of such collections for the benefit of the society, the conclusion that the Collins Company was held out to be the agent of the society to make collections of their loans is clear beyond argument. Colorado Title & Trust Co. v. Childers, 256 F. 307 (C. C. A. 5); Santa Marina Co. v. Canadian Bank of Commerce (C. C. A.) 254 F. 391; Knox College v. Gray (C. C. A.) 299 F. 179; Security Co. v. Richardson (C. C.) 33 F. 16; Lindroth v. Litchfield (C. C.) 27 F. 894; Wilcox v. Carr (C. C.) 37 F. 130; Mechem on Agency (2d Ed.) vol. 1, § 953; 2 Corpus Juris, 619, § 256; 21 Ruling Case Law, 867, § 42; Plummer v. Knight, 156 Mo. App. 321, 137 S. W. 1019; Harrison Natl. Bank v. Austin, 65 Neb. 632, 91 N. W. 540, 59 L. R. A. 294, 101 Am. St. Rep. 639; Wells v. Combs, 205 Ky. 622, 266 S. W. 249; First Natl. Bank v. Hessell, 133 Wash. 643, 234 P. 662.

"Except for the execution of instruments under seal or for the conduct of transactions required by statute to be authorized in a particular way, apparent authority to do an act may be created by written or spoken words or by any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Restatement of the Law, Agency, Amer. Law Institute, § 27.

The provision in the contract between the society and the Collins Company to the effect that the Collins Company was in no instance to act or be authorized to act as agent of the society, never having been brought to the knowledge of the plaintiff or his agent, was a secret restriction upon the apparent agency of the Collins Company that was in no wise binding upon the plaintiff. Hall v. Union Indemnity Co. (C. C. A.) 61 F.(2d) 85, and cases there compiled.

As to the matter of the indorsement, the showing that the society itself, from its home office, furnished the Collins Company with a rubber stamp adapted for and which could only have been used for the indorsement of checks or drafts coming into the hands of the Collins Company as collection agents, made payable to the society, taken together with

the fact that all such checks were indorsed by the Collins Company with the stamp, and the further fact that none of the remittances made to the society by the Collins Company were of original checks received but were always Collins Company checks or drafts— these facts, in the light of the great extent of the business and the examinations from time to time of the Collins Company books by the auditors of the society, permit of no reasonable inference other than that the society had full knowledge of the way in which the collection of borrowers' checks payable to it were effected by the Collins Company, and the sanction of such uses by the society. The borrowers and those who like the plaintiff owed mortgage debts to the society were afforded no notice of any restriction upon the authority of the Collins Company as to the use of the rubber stamp furnished by the society to the Collins Company to make indorsement of the name of the society upon the checks payable to it. The plaintiff, owing the mortgage debt to the society, had every apparent reason to believe that the Collins Company was the society's agent authorized by the society to collect the debt. He caused the check to be delivered to the Collins Company in good-faith payment of the debt, and the proceeds duly came into the hands of the Collins Company. If thereafter the Collins Company defrauded the society by failing to remit the payments which it had received (which it should be noted the Collins Company denies), and a loss resulted which must be suffered either by the society or the plaintiff or his agent, it is just that such loss should fall upon the society and not upon the plaintiff or his agent—this upon the familiar principle that, where one of two innocent persons must suffer for the fraud of a third, that one should bear the loss who enabled the third person to inflict the injury. Joy v. Godchaux, 35 F. (2d) 649 (C. C. A. 8); Western Union Tel. Co. v. Schriver, 141 F. 538, 4 L. R. A. (N. S.) 678 (C. C. A. 8); 21 Corpus Juris 1170; National Safe Deposit, Savings & Trust Co. of D. C. v. Hibbs, 229 U. S. 391, 33 S. Ct. 818, 57 L. Ed. 1241; Rhoderick v. Swartzell, 62 App. D. C. 180, 65 F.(2d) 813; Hall v. Union Indemnity Co. (C. C. A.) 61 F.(2d) 85.

Each of the thirteen assignments of error supported by elaborate and painstaking brief for appellant has been considered, but none is found to require reversal.

. The decree of the trial court is affirmed.